**United States District Court**

**District of Massachusetts**

| | |
|---|---|
| **United States of America,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Li Wen Tang,** | ) **Criminal Action No.** |
| | ) **22-10205-NMG** |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Li Wen "Tony" Tang ("Tang" or "defendant"), along with two co-defendants, has been indicted on two counts of robbery in violation of 18 U.S.C. § 1951.  The government also brings a robbery forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Currently before the Court is defendant's motion to suppress evidence.  For the reasons that follow, that motion will be allowed, in part, and denied, in part.

I.    **Background**

     The charges against Tang arise from alleged robberies of
several spas in June, 2022, including at the Balance Reflexology
Spa in Brookline, MA ("the Brookline Spa") and May's Spa Massage
in Stoneham, MA ("the Stoneham Spa").

     In July, 2022, Magistrate Judge Cabell issued a warrant
("the July Warrant") for, <u>inter alia</u>, cell-site location
information ("CSLI") and timing advance data for the telephone
number (857) 452-3778 from April 29, 2022 through July 15, 2022.
The application for the July Warrant was supported by an
affidavit of Federal Bureau of Investigation ("FBI") Special
Agent Jason Kentros ("Agent Kentros").

     Based on CSLI gathered pursuant to the July Warrant and in
light of a July, 2022, robbery of a Wakefield, Massachusetts
spa, FBI agents applied for a second warrant seeking CSLI and
timing advance data for the telephone number (857) 452-3778 from
July 15, 2022 through August 10, 2022.  Magistrate Judge Cabell
issued the second warrant shortly thereafter ("the August
Warrant").  The application for the August Warrant was supported
by an affidavit of Special Agent Kentros.

     **A. The Brookline Spa Robbery According to the Affidavit**

     The affidavit for the July Warrant averred that at some
time before 9:00 p.m. on June 12, 2022, three men were observed
on a surveillance camera arriving at the Brookline Spa in a

-2-

brown or beige Porsche Cayenne.  The Porsche was later identified as belonging to co-defendant Jonas Nunez ("Nunez").

One of the three men, an Asian male with black-rimmed eyeglasses, entered the spa ostensibly to purchase a massage. After he entered, a female employee locked the front door.  She then took the man to a massage room but almost immediately, he excused himself to use the bathroom and returned claiming no longer to want a massage.  They returned to the lobby and the man unlocked the front door.

Soon thereafter, two masked men, one white and one African-American, entered the Brookline Spa brandishing firearms.  The masked men struck the female employee in the face, tied her up and demanded to know "[w]here is the money?"  They proceeded to rummage through the spa and ultimately stole $500.  Surveillance footage depicts three men walking out toward the brown or beige Porsche Cayenne shortly before 9:00 p.m.

**B. The Stoneham Spa Robbery According to the Affidavit**

The affidavit also attests that at about 9:00 pm on the same evening, the owner of the Stoneham Spa received a call from a male who asked if the spa was still open and, upon receiving an affirmative response, said he would be arriving shortly.  The owner subsequently called the man back and informed him that the spa would close soon.  The owner later told investigators that no more customers arrived that night.

-3-

Call logs for the Stoneham Spa indicate that the call to the spa was likely made at 9:11 p.m. from the phone number (781) 797-0381 ("the 0381 number").  That telephone received calls back from the spa at 9:38 p.m. and 9:39 p.m. and made a second call to the spa at 9:40 p.m.

Police observed on surveillance video a brown or beige Porsche Cayenne entering the strip mall where the Stoneham Spa is located at about 9:33 p.m.  The same video depicts a Jeep SUV entering a different entrance of the strip mall and circling to the mall at about 9:49 p.m.  The footage reveals three individuals who match the descriptions of the robbers walking toward, and entering, the spa at about 9:51 p.m.

According to victim statements, three masked men, one of whom brandished a firearm, entered the Stoneham Spa and tied up and robbed several victims of their cellphones and other valuables.

### C. Investigation into the Phone Calls

The service provider for the 0381 number notified investigators that it was a Voice-over-Internet Protocol number assigned to Google.  Google provided records that the 0381 number had an associated email of tang90446@gmail.com and a recovery phone number of (857)452-3778 ("the 3778 number").  The affidavit avers that the 3778 number had minimal activity in the

months preceding the robberies but significant activity during the period in which the robberies occurred.

After searching public databases, investigators determined that the 3778 number is a T-Mobile number assigned to "Tony TANG."  Call detail records revealed that the 3778 number was in contact with a telephone belonging to Nunez 125 times and another phone belonging to co-defendant Alfeu Barbosa ("Barbosa") at least nine times in the weeks immediately preceding and following the robberies.

Based on these facts, Agent Kentros requested a warrant for, inter alia, CSLI and timing advance measurements for the 3778 number from April 29, 2022, to the date of the warrant application.

Based on this data, investigators found that the user of the 3778 number was in the vicinity of the Stoneham Spa at the time of the robbery as well as the vicinity of a Boston spa at the time of another robbery not part of the indictment.  As the 3778 number was both assigned to "Tony TANG" and linked with a Google account for tang90446@gmail.com, investigators came to identify defendant as one of the three alleged robbers.

Investigators took several other steps to identify defendant Tang.  They matched him to the description of the Asian male who entered the Brookline Spa immediately prior to the robbery and to the description of the unknown Asian male

-5-

suspect involved in the heretofore uncharged July 28 robbery of the Wakefield spa.  The Asian male suspect in the Wakefield robbery similarly sought spa services just before the robbery.

### D. The August 11, 2022, Interrogation and Seizure

According to an affidavit of Special Agent Bryce Ferrara ("Agent Ferrara"), investigators learned through CSLI data that cell phones attributed to defendant and co-defendant Nunez were in or around the Chinatown neighborhood of Boston on August 10, 2022.  Officers were also aware that a robbery suspect was known to operate a gold Porsche Cayenne with Massachusetts registration 2GYN41.

That evening, officers located the Porsche and observed an Asian male, who they believed to be Tang, getting out.  With only co-defendant Nunez remaining in the car, Boston Police officers conducted a stop.  During the stop, officers arrested Nunez for unlawful possession of ammunition and carrying a dangerous weapon (brass knuckles).  Officers did not recover a firearm but believed that the Asian male took it when he got out of the Porsche.

After the stop and arrest, officers used CSLI to trace what they believed to be Tang's phone to Melrose, MA.  In the early hours of August 11, 2022, Tang was found in the vicinity of 11 Ashmont Park in Melrose.  There, Tang agreed to speak with investigators at the Melrose Police station.

At the station, officers told Tang that he could leave any time and read him his Miranda warnings.  They told Tang they believed he was involved in the spa robberies and asked him about the location of the gun used in those robberies.  Tang did not admit or deny the allegations and asked to speak further in the morning after getting some rest.

According to the affidavit, the officers noticed that there were two cellphones on the table in front of Tang.  Concerned that defendant would destroy evidence on the phones upon returning home, officers seized the two cell phones.  Tang asserts that, to the contrary, officers had previously seized the cell phones from his pocket.  The government contends that the phones were not searched until a search warrant was later obtained.

Due to the conflicting narratives, this Court held an evidentiary hearing in November, 2023 in which defendant and two FBI agents testified as to the events surrounding the seizure of the cell phones.  The details of that hearing are discussed, infra, Section IV.C.1.

## II.  **Motion to Suppress**

In support of his motion to suppress defendant raises three arguments: 1) there was insufficient probable cause to support the July Warrant, 2) the infirmities in the July Warrant negate

-7-

the basis for probable cause in the August Warrant and 3) defendant's cellphone was unlawfully searched and seized without a warrant.

**A. Probable Cause for the July Warrant**

Defendant contends that the July Warrant is invalid because it was not based upon probable cause and that any CSLI derived therefrom should be suppressed.  He asserts that there was insufficient basis to infer that the defendant "as the holder of the cell phone with the [ ] 3778 number" was involved in the criminal activity detailed in the affidavit.

The finding of a magistrate judge as to probable cause is entitled to "great deference". Illinois v. Gates, 462 U.S. 213, 236 (1983).  The decision to issue a search warrant should be reversed only if there is "no substantial basis for concluding that probable cause existed." United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015) (citation omitted).

Probable cause exists when, based upon common sense and the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.  A warrant application must demonstrate probable cause to believe that (1) a crime has been committed (the "commission" element) and (2) enumerated evidence of the offense will be found at the place searched (the "nexus"

element).  <u>United States</u> v. <u>Feliz</u>, 182 F.3d 82, 86 (1st Cir. 1999).

Defendant contests the nexus element.  He asserts that the combination of 1) his association with co-defendant Barbosa and 2) the log of the calls from the 3778 number to the Stoneham Spa were insufficient to support probable cause.  Furthermore, he claims that the warrant was overly inclusive in permitting the search of CSLI from April 29, 2022 to July 15, 2022.

Defendant's arguments are unavailing.  Officers made reasonable inferences in linking defendant, as the holder of the 3778 number, to the robberies.  The defendant does not appear to contest that he owns the telephone associated with the 3778 number and, in any event, it would be a reasonable inference based on listings in public databases.

The 3778 number was the recovery number for the 0381 Google Voice-over-Internet Protocol number that called the Stoneham Spa several times in the minutes to hour before the robbery. According to the affidavit, the caller from the 0381 number asked whether the Stoneham Spa was still open and the owner avers that no customers visited the spa after that call.  From those facts alone, there is reason to infer that the caller from the 0381 number (and therefore, the owner of the 3778 number) may have called to learn whether it was a good time to rob the

spa.  The caller's use of Google Voice number further indicates a desire to shield the caller's identity.

Two additional facts affirm a finding of probable cause. First, investigators discovered evidence that the 3778 number had minimal IP activity until the two-week period of the robberies.  Second, during that two-week period, the 3778 number made at least 9 calls to co-defendant Barbosa.  Defendant concedes that there was probable cause to link Barbosa to the robbery.  Those facts in conjunction with evidence tying defendant to phone calls made to the Stoneham Spa immediately prior to the robbery are more than sufficient to establish probable cause for the July Warrant.

In addition, the magistrate judge did not authorize an overly expansive search by permitting a search of CSLI data for the two and one-half months prior to the robberies.  That period was a reasonable amount of time for investigators to gather information about preparations for the crimes at issue.[1] See United States v. Ramirez, 471 F. Supp. 3d 354 (D. Mass. 2020) (finding probable cause for search of three months of CSLI including data from six weeks before the first robbery).

---

[1] Even if probable cause was uncertain, the good faith exception applies because the warrant was not so lacking in probable cause as to be unreliable or deemed to be based on false information.

### B. Probable Cause for the August Warrant

Defendant next contests the probable cause basis for the August Warrant.  His argument for suppressing the fruits of the August Warrant rests entirely on his argument that the July Warrant lacked probable cause.  Accordingly, defendant's motion to suppress with respect to the August Warrant will also be denied.

### C. The Search and Seizure of Defendant's Cellphone

Finally, defendant asserts that both during and immediately before the August 11, 2022 interrogation at the Melrose Police station, his cell phone was seized without a warrant in violation of the Fourth Amendment.  On November 2, 2023, this Court held an evidentiary hearing at which defendant, Agent Ferrara and FBI Special Agent Thomas Zukauskas testified.

#### 1. Events According to Witness Testimony

Defendant testified that about 12:30 a.m. on August 11, 2022, unidentified officers detained and handcuffed defendant in front of 11 Ashmont Park in Melrose.  An officer then purportedly patted down and emptied his pockets which contained two cell phones and a pack of cigarettes.  While the cigarettes were returned to defendant, he attested that the cell phones were not.  Defendant stated that Agents Zukauskas and Ferrara arrived at the scene shortly thereafter.

Defendant was then transported to the Melrose Police station after which defendant says the handcuffs were removed. Agents Zukauskas and Ferrara interviewed defendant at the station.  Defendant asserts that during the interview, his phones were never returned to his custody despite his requests. At some point, agents seized the phones from the interview table.

The government presents a different version of events. Agent Zukauskas testified that shortly after arriving at 11 Ashmont Park, a Melrose police officer uncuffed defendant at the agent's suggestion.  Defendant then voluntarily agreed to come to the Melrose Police station for an interview.

While at the station, the agents claim to have told defendant that they believed his phone had been in contact with other individuals under investigation for the robberies.  Toward the end of the interview, Agent Ferrara says that he left the room to seek authorization from the U.S. Attorney's Office to seize the two cell phones which were then on the interview table.

None of the three testifying witnesses, however, could recall who originally put the cell phones on the table.  The government offers the theory that defendant did so because the phones were purportedly closer to him.

## 2. Plain View Exception

At the evidentiary hearing and in their briefing, the parties concentrated on the application of the plain view exception. Under that exception, a warrantless search is permissible if:

> (1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a lawful right of access to the object itself.

United States v. Allen, 573 F.3d 42, 51 (1st Cir. 2009)(quoting United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004)).

The government's primary contention, is that the plain view exception applies to the seizure of the phones because they were taken from atop the interview table.  It contends that the Court should discredit defendant's assertion that the phones were initially seized from his pocket at 11 Ashmont Park because the only evidence in support of that theory is defendant's "self-serving testimony."  The government also impugns defendant's reliability on several other matters and thus urges the Court to discredit his version of how the phones were seized.

The testimony of the agents indeed undermines defendant's credibility concerning his testimony that he was handcuffed until he arrived at the police station and that officers did not sufficiently advise him that going to the station was voluntary. Neither of those contentions is disputed in defendant's

-13-

supplemental brief but the government offers no testimony that directly refutes defendant's assertion concerning the manner in which his phones were seized.  The government has the burden of demonstrating that the plain view exception applies.  See United States v. Rutkowski, 877 F.2d 139, 141 (1st Cir. 1989).  It has not met that burden.

At the evidentiary hearing, neither agent could recall how the cell phones ended up on the table.  Nor could either speak to whether defendant's phone was initially seized by local police because both agents arrived after defendant had been initially searched.  Furthermore, the application for the warrant to search the phones states that one of the two phones was "seized from the person" of defendant.  In response, the government offers no explanation.  Accordingly, the government has not met its burden of proving that the cell phones were seized from plain view.

### 3. Exigent Circumstances Exception

Finally, the government asserts that exigent circumstances justified its seizure of the cell phones.  It contends that the interview put defendant on notice that he was a suspect in the robberies and thus, Tang had an incentive to delete any inculpatory evidence on the phone after he left the station.  Defendant rejoins that there were no facts specific to his

conduct that would lead the agents to believe he planned to

tamper with the phones.

> In order to prove exigent circumstances, authorities must

> > reasonably believe that there is such a compelling
> > necessity for immediate action as will not brook the
> > delay of obtaining a warrant.

Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 24 (1st Cir.

2016) (internal quotations and citations omitted).  One such

exigent circumstance is "the imminent destruction or removal of

evidence." United States v. Rodriguez-Pacheco, 948 F.3d 1, 7

(1st Cir. 2020).  The government must support their claim of

exigent circumstances with "particularized, case-specific

facts." Id. (quoting United States v. Hidalgo, 747 F.Supp. 818,

828 (D. Mass. 1990)).

> The government has failed to meet its "heavy burden" of

adducing case-specific facts that support an objectively

reasonable basis for inferring that defendant would "imminently"

delete evidence from the phones.  See French v. Merrill, 15

F.4th 116, 133 (1st Cir. 2021); Rodriguez-Pacheco, 948 F.3d at

7.  It is true that there is evidence linking Tang to Nunez and

the underlying robberies.  But defendant gave no particular

indication that he intended to delete any phone evidence or

otherwise alter his behavior during the lengthy interview.

Furthermore, defendant's decision voluntarily to speak with

agents at the station after being detained at 11 Ashmont Park suggests that no true emergency existed.

Finally, the interview lasted more than an hour and Agent Ferrara testified that he could have submitted a search warrant application at any time of day. Accordingly, the government has not met its heavy burden of demonstrating that the agents were "truly confronted with a now or never situation." Missouri v. McNeely, 569 U.S. 141, 153 (2013) (quoting Roaden v. Kentucky, 413 U.S. 496, 505 (1973)).

**ORDER**

For the foregoing reasons, the motion of defendant, Li Wen Tang, to suppress (Docket No. 78) is, with respect to evidence acquired from the two cell phones seized at the Melrose Police Department in the early hours of August 11, 2022, **ALLOWED** but otherwise **DENIED**.

**So ordered.**

 /s/ Nathaniel M. Gorton

Nathaniel M. Gorton
United States District Judge

Dated:  December 18, 2023

-16-